UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------

UNITED STATES OF AMERICA,

                                           **MEMORANDUM & ORDER**

              v.                     20-CR-404 (MKB)

ANTHONY WILLIAMS,

                          Defendant-Petitioner.

---------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

On March 17, 2021, Defendant-Petitioner Anthony Williams pleaded guilty to being a felon in possession of ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).[1] (Tr. of Pleading Before the Hon. Cheryl L. Pollak ("Plea Tr.") 21:4–25:18, annexed to Letter Requesting that the Court Accept Williams' Guilty Plea as Attachment 1, Docket Entry No. 18-1.) On May 16, 2023, the Court sentenced Williams to ninety-eight months of imprisonment to be followed by three years of supervised release. (Judgment, Docket Entry No. 36.)

On January 29, 2024, Williams, proceeding *pro se*, moved to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, and the Court construes his submission as also moving to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(2), which allows for reductions in sentencings imposed based on a sentencing range that the United States Sentencing Commission ("Sentencing Commission") subsequently lowered. (Def.'s Letter Mot. in Writ ("Def.'s Mot."), Docket Entry No. 38.) On February 17, 2024, the Government opposed the motion. (Gov't's Resp. in Opp'n to Def.'s Mot. ("Gov't's Opp'n"), Docket Entry No. 39.) For the reasons

---

[1] The Court accepted Williams' guilty plea on April 19, 2021. (Order Accepting Guilty Plea, Docket Entry No. 19.)

explained below, the Court denies Williams' motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 and to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(2).

**I. Background**

**a. Williams' guilty plea**

On September 25, 2020, a grand jury returned a single count Indictment charging that "[o]n or about June 17, 2020, within the Eastern District of New York, the defendant ANTHONY WILLIAMS, knowing that he had previously been convicted in a court of one or more crimes punishable by a term of imprisonment exceeding one year, did knowingly and intentionally possess in and affecting commerce ammunition, to wit: .40 S&W caliber Blazer ammunition and .40 S&W caliber Prvi Partizan ammunition" under Title 18, United States Code, Sections 922(g)(l), 924(a)(2) and 3551 *et seq.*  (Indictment ¶ 1, Docket Entry No. 1.)  Law enforcement arrested Williams on October 20, 2020.  (Presentence Investigation Report ("PSR") ¶ 9, Docket No. 23.)

On or before March 15, 2021, the Government shared with Williams' counsel a Plea Penalty Sheet ("*Pimental* Letter"), which stated that it "is not a plea agreement" and advised "of the penalties [Williams] faces upon pleading guilty" to the Indictment.  (*Pimental* Letter 1, Docket Entry No. 17; *see* Def.'s Mot. 4.)  The *Pimental* Letter advised that the maximum term of imprisonment for the felon in possession of ammunition offense was ten years and estimated that under the United States Sentencing Guidelines Manual ("Guidelines" or "U.S.S.G."), the applicable adjusted offense level is 32, the range of imprisonment is 168 to 210 months assuming Williams falls within Criminal History Category IV, and the effective Guidelines range of imprisonment is 120 months consistent with the statutory maximum imprisonment term.  (*Pimental* Letter 1–3.)  The *Pimental* Letter also expressly stated the Guidelines calculations "are

only estimates and are not binding on the government, the Probation Department or the Court." (*Pimental* Letter 2 n.1.)

On March 17, 2021, Williams pleaded guilty before Magistrate Judge Cheryl Pollak to the sole count of the Indictment without a plea agreement ("Plea Hearing"). (Min. Entry dated Mar. 17, 2021; *see* Plea Tr. 21:12-19; PSR ¶ 1.) Before taking his plea, Judge Pollak inquired as to Williams' competence to plead guilty, (Plea Tr. 8:17–11:16); his satisfaction with his counsel and review of the Indictment, (*id.* at 12:12–24); and his understanding of the charge against him, (*id.* at 12:25–13:9), and the application of the Guidelines, (*id.* at 15:20–16:16); and explained that he faced up to ten years of imprisonment, (*id.* at 18:5–20). Williams acknowledged that "no one can promise [him] exactly what [his] sentence will be," no one promised him "something that has caused [him] to plead guilty," and no one "made any promise to [him] as to what his sentence will be." (*Id.* at 16:6–25.) After entering his guilty plea, Williams confirmed that he made the plea "voluntarily and of [his] own free will," that no one had "threatened or forced [him] to plead guilty," and also confirmed that no one "made any promise to [him] as to what [his] sentence will be." (*Id.* at 21:17–22:3.) Williams then explained the conduct that made him guilty of the charged crime, stating that "[o]n June 17, 2020, I possessed ammunition and I previously [had] been convicted of being a felon in the Eastern District of New York," (*id.* at 22:8–10), and affirmed his guilt as to specific elements of the offense: that he knew he had the ammunition, had been convicted of a crime that carried a potential sentence of more than one year, and was in Brooklyn when he possessed the ammunition, (*id.* at 22:11–24:16.) Williams's counsel stipulated to the Government's proffer that the seized "ammunition was all manufactured outside of the State of New York" as "proof that the ammunition had traveled through interstate commerce." (*Id.* at 24:17–25:6.) Judge Pollak found that Williams was "acting voluntarily, fully

understands his rights and the consequences of his plea and that there is a factual basis for the plea," and recommended that this Court accept Williams' plea. (*Id.* at 25:13–18.)

On April 19, 2021, the Court accepted Williams's guilty plea, finding "based upon a review of the transcript of the guilty plea" that he "pleaded guilty knowingly and voluntarily, and there is a factual basis supporting [his] plea of guilty." (Order Accepting Guilty Plea 1.)

### b.  Williams' sentencing

On December 9, 2021, the U.S. Probation Office ("Probation Office") issued a PSR, and determined the total offense level of 32, criminal history category of IV, and Guidelines imprisonment range of 168 to 210 months. (PSR ¶¶ 13–23, 29–31, 65.) The PSR described three "non-fatal shootings" involving Williams on May 23, 2020; June 17, 2020; and June 19, 2020 that were captured on surveillance video and preceded his Indictment. (*Id.* ¶¶ 3–9.) The video from the June 17, 2020 shooting showed Williams firing a gun at and striking two individuals in the back, causing non-fatal injuries, and nearly hitting a third individual. (*Id.* ¶ 5.) The basis for Williams' Indictment was the ammunition officers recovered from the scene of this shooting. (*Id.* ¶¶ 5, 14; Indictment ¶ 2.)

To calculate Williams' total offense level, the Probation Office applied Guideline § 2K2.1, the Guideline applicable to violations of 18 U.S.C. § 922(g)(1). (PSR ¶ 14.) The Probation Office explained that Section 2K2.1(c)(1)(A) prescribes that "if the defendant possessed ammunition cited in the count of conviction in connection with another offense, §2X1.1 is applied in respect to that other offense if the resulting offense level is greater than that determined under [U.S.S.G.] §2K2.1." (*Id.*) The Probation Office further noted that Section §2X1.1(a) "states that the base offense level is the base offense level from the guideline for the substantive offense, plus any adjustments from such guideline for any intended offense conduct that can be established with reasonable certainty." (*Id.*) The Probation Office then applied

section 2X1.1 because Williams "possessed the ammunition cited in the count of conviction in an attempted murder," the June 17, 2020 shooting.  (*Id*.)  As a result, "§ 2A2.1(a), Assault with Intent to Commit Murder; Attempted Murder, [was] used to determine the offense level because it results in a higher offense level."  (*Id.*)  The Probation Office concluded that "the base offense level is 33, because the object of the offense would have constituted first degree murder, as the murder would have been premeditated."  (*Id.*)  The Probation Office then applied a two-level enhancement pursuant to section 2A2.2(b)(1)(B) because Williams "struck two men in the back, causing non-fatal injuries" and the "victims sustained serious bodily injury."  (*Id.* ¶ 15.)  The Probation Office also applied a three-point reduction to account for Williams' acceptance of responsibility, resulting in a total offense level of 32.  (*Id.* ¶¶ 21–23.)  The Probation Office determined Williams' criminal history category to be IV based on his prior criminal convictions, which yielded a subtotal score of five, and a two-point addition under the version of section 4A1.1(d) in effect at the time because Williams committed the June 17, 2020 shooting while under supervision of "New Jersey state probation" for a prior criminal conviction.[2]  (*Id.* ¶¶ 25–30.)  Although the Guidelines imprisonment range was 168 months to 210 months based on the total offense level and criminal history category, because the statutory maximum sentence that could be imposed was 120 months, the PSR specified that the restricted Guidelines range was 120 months.  (*Id.* ¶¶ 64–65.)

On May 8, 2023, Williams' filed a sentencing memorandum requesting an 84-month sentence on the basis that, *inter alia*, "the nature of the offense conduct in this case" did not warrant application of the "attempted murder cross-reference" at Guidelines §2A2.1 because

---

[2]  As discussed in Section III below, the Guidelines were subsequently changed and made to apply retroactively.  Williams is no longer subject to an additional two points for being under supervision at the relevant time.

"there [was] no contextual evidence at all to show premeditation" or that Williams "specifically intended to kill" the two men he shot on June 17, 2020.  (Def.'s Sent'g Mem. 6–8, Docket Entry No. 33).  On May 11, 2023, the Government filed a response that was consistent with the PSR and argued that a 120-month sentence was appropriate.  (Gov't Sent'g Resp. 7–12, Docket Entry No. 34.)

On May 16, 2023, before imposing Defendant' sentence, the Court heard arguments from the parties regarding whether the June 17, 2020 shooting constituted attempted murder or aggravated assault ("Sentencing Hearing").  (Tr. of Crim. Cause for Sent'g Before the Hon. Margo Brodie ("Sent'g Tr.") 6:3–33:20.)  The parties agreed that if the shooting constituted aggravated assault rather than attempted murder, the Guidelines imprisonment range would be lowered from 168 to 210 months to 46 to 57 months.  (*Id.* at 13:2–10.)  After reviewing the evidence, including surveillance video of the shooting, and hearing extensive arguments from the parties, (*see id.* at 13:22–33:20), the Court found that Williams' actions "suggest[] that he intended to kill these individuals," and determined that Williams' "objection to the PSR's finding of the cross-reference is unfounded," (*id.* at 33:21–35:16).  The Court adopted the PSR's calculation and determined the total offense level to be 32, criminal history score to be seven, criminal history category to be IV, Guideline imprisonment range to be 168 months to 210 months, and restricted Guideline range to be 120 months.  (*Id.* at 35:7–16.)  Based on the lower Guidelines range for aggravated assault and factors such as Williams' difficult upbringing, Williams changed his sentencing request from 84 months to 60 months.  (*See id*. at 13:2–17, 35:18–40:25.)  The Government continued to argue for a sentence of 120 months.  (*Id.* at 42:10–46:12.)

After hearing arguments on the 18 U.S.C. 3553(a) factors and Williams' oral statement to the Court, the Court found that Williams' request for a Guideline sentence of 46 months to 57 months, did not adequately account for the conduct Williams engaged in.  (*Id.* at 47:1–48:17.)

The Court "accept[ed] [Williams] at [his] word . . . that [his] intent was not to kill" and sentenced him without applying the cross-reference of first-degree attempted murder. (*Id.* at 47:14–50:23.) The Court sentenced Williams to ninety-eight months of imprisonment and three years of supervised release with special conditions and imposed a mandatory $100 special assessment. (*Id.* at 50:18–52:9.) The Court determined that a sentence of ninety-eight months was sufficient but not greater than necessary to comply with the purposes of sentencing. (*Id.* at 49:1–6.) The Court advised Williams of his right to appeal. (*Id.* at 52:10–22.) Williams did not pursue a direct appeal.

## II.    Motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255

Williams argues that the Court should "vacate, set aside, correct, or reverse [his sentence] and remand for resentencing" under section 2255 because: (1) the *Pimentel* Letter constituted a plea agreement and the Government breached the agreement by arguing for a sentence that was inconsistent with the letter's terms, (Def.'s Mot. 4); (2) his guilty plea "was insufficient" and he is not "bound to" it because "he did not admit the interstate commerce element," there was no written agreement, the Government never "established the [three] prong element justifying the petitioner['s] guilt," he "never agreed or reviewed any legal documents with attorney concerning [his] 'admission of guilt,'" he pleaded guilty "at the request of defense counsel," and "defense counsel with the [G]overnment moved to settle this matter without [his] approval or dismissal of offered proposals concerning [his] case," (*id.* at 5, 20–25); (3) the Guidelines calculation was in error because it applied an "outrageous" enhancement for attempted murder in connection with the June 17, 2020 shooting that he neither pleaded to nor otherwise admitted guilt for as well as the May 23, 2020 shooting that was determined to be "part of the same course of conduct or common scheme or plan," (*id.* at 4–5, 7–15); (4) his counsel was "constitutionally ineffective" in that he failed to "act[] in good faith t[o]wards his legal obligations" and "properly present"

Williams' arguments "concerning" the "volume of legal issues" with the PSR that he "raised to

his attorney" before his Sentencing Hearing, the Government's breach of the *Pimental* Letter (as

discussed above), and other issues he raises in this motion, (*id.* at 6, 26–28); and (5) his sentence

"was imposed in accordance with the residual clause, then found in the Sentencing Guidelines,

and the [G]uidelines residual clause is unconstitutionally vague under *Johnson v. United States*,"

(*id.* at 6–7 (internal quotation marks omitted)).  Williams contends a hearing is warranted

because "he is not an attorney" and "put together" the motion "to the best of his ability."  (*Id.* at

30.)

    The Government argues that all of Williams' claims except for his ineffective assistance

of counsel claim are "procedurally barred" because Williams "did not file a direct appeal and

offers no 'cause' for his failure to do so."  (Gov't's Opp'n 3.)  The Government also argues that

all of Williams' substantive arguments are meritless because (1) there was no plea agreement as

the "*Pimental* letter explicitly stated in bold that it was 'not a plea agreement,'" (*id.* at 3–4); (2)

Williams' guilty plea had a sufficient factual basis and was voluntary, (*id.* at 5, 7); (3) the Court

"properly calculated" the Guidelines range as the application of § 2A2.1 was appropriate based

on its finding that "the ammunition cited in the count of conviction had been used in an

attempted murder," § 2K2.1(c) is applicable as Williams pleaded guilty to the indictment, and

the Court focused solely on the June 17, 2020 shooting underlying the charge offense and any

Guideline errors would have been harmless since the Court "explicitly rejected reliance on the

attempted murder Guidelines in imposing [the] sentence and sentenced the defendant on the

assumption that he had not intended to kill anyone," (*id.* at 4–5); (4) Williams has failed to

"identify any deficient performance" by his counsel necessary to state an ineffective assistance

of [c]ounsel claim, (*id.* at 6); and (5) Williams' "was not sentenced pursuant to any Guidelines

residual clauses," and even if he had been, "the Guidelines are not subject to" *Johnson*, (*id.* at 6). The Government did not respond to Petitioner's request for a hearing.

Under 28 U.S.C. § 2255, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a prisoner in custody pursuant to a sentence imposed by a federal court "may move the court which imposed the sentence to vacate, set aside or correct the sentence" if the "sentence was imposed in violation of the Constitution or laws of the United States" or if "the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  28 U.S.C. § 2255(a); *see Medunjanin v. United States*, 99 F.4th 129, 133 (2d Cir. 2024) ("Under 28 U.S.C. § 2255(a), a prisoner may petition a district court to 'vacate, set aside or correct' a sentence if 'the sentence was imposed in violation of the Constitution or laws of the United States, . . . or [the sentence] is otherwise subject to collateral attack.'"); *Gomez v. United States*, 87 F.4th 100, 106 (2d Cir. 2023) ("A federal inmate may move the district court to 'vacate, set aside or correct' a sentence if 'the sentence was imposed in violation of the Constitution or laws of the United States . . . or [the sentence] is otherwise subject to collateral attack.'" (alterations in original) (quoting 28 U.S.C. § 2255(a))); *Gonzalez v. United States*, 792 F.3d 232, 238 (2d Cir. 2015) ("[A]ll challenges to a [federal] conviction and sentence can . . . be brought in a . . . § 2255 motion . . . ."); *Adams v. United States*, 372 F.3d 132, 134 (2d Cir. 2004) ("[Section] 2255 is the appropriate vehicle for a federal prisoner to challenge the *imposition* of his sentence." (citing *Chambers v. United States*, 106 F.3d 472, 474 (2d Cir. 1997))).  In order to prevail on a section 2255 petition, a petitioner must demonstrate "a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'"  *Cuoco v. United States*, 208 F.3d 27, 30 (2d Cir. 2000) (quoting *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995)); *United States v. Fnu Lnu*, No. 21-209, 2024 WL 4039575, at *4 (2d Cir. Sept. 4, 2024) (same);

*see also Tavarez v. United States*, 81 F.4th 234, 240 (2d Cir. 2023) ("Our [c]ourt has long reserved § 2255 relief for prejudicial errors that are so grave, they result in a complete miscarriage of justice." (alterations adopted) (internal quotation marks omitted) (quoting *Kassir v. United States*, 3 F.4th 556, 564 (2d Cir. 2021))).  When a defendant attacking his or her sentence is proceeding *pro se*, the court must "read [the defendant's] submissions broadly so as to determine whether they raise any colorable legal claims." *United States v. Parisi*, 529 F.3d 134, 139 (2d Cir. 2008) (citing *Weixel v. Bd. of Educ.*, 287 F.3d 138, 145–46 (2d Cir. 2002)); *see also Kravitz v. Purcell*, 87 F.4th 111, 119 (2d Cir. 2023) ("We liberally construe pleadings and briefs submitted by pro se litigants, reading such submissions to raise the strongest arguments they suggest." (quoting *Publicola v. Lomenzo*, 54 F.4th 108, 111 (2d Cir. 2022))).  "[I]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the [district court] must dismiss the motion." *Seabrook v. United States*, No. 22-841, 2023 WL 7489961, at *2 (2d Cir. Nov. 13, 2023) (quoting *Puglisi v. United States*, 586 F.3d 209, 213 (2d Cir. 2009)).

Williams is not entitled to relief under 2255 because (1) his three claims that directly challenge his conviction or sentencing calculation are procedurally defaulted and otherwise fail on the merits; (2) he has failed to show that his counsel's performance was deficient; and (3) neither the residual clause nor *Johnson* apply to his sentence.  The Court discusses each below.

### a. Williams did not pursue a direct appeal and has not shown cause for failing to do so or his actual innocence

Williams did not appeal his conviction on any of the claims nor the sentence that he now challenges in his habeas petition.  "A motion under § 2255 is not a substitute for an appeal." *Zhang v. United States*, 506 F.3d 162, 166 (2d Cir. 2007) (quoting *United States v. Munoz*, 143 F.3d 632, 637 (2d Cir. 1998)).  Accordingly, "[w]here a criminal defendant has procedurally

forfeited his claim by failing to raise it on direct review, the claim may be raised in a § 2255

motion only if the defendant can demonstrate either: (1) 'cause for failing to raise the issue, and

prejudice resulting therefrom,'; or (2) 'actual innocence.'" *Rosario v. United States*, 164 F.3d

729, 732 (2d Cir. 1998) (internal citation omitted) (first quoting *Douglas v. United States*, 13

F.3d 43, 46 (2d Cir. 1993); and then quoting *Bousley v. United States*, 523 U.S. 614, 623

(1998)); *see Davis v. United States*, No. 21-2471, 2024 WL 980637, at *1 n.4 (2d Cir. Mar. 7,

2024) (same).  However, this rule is inapplicable to Sixth Amendment claims for ineffective

assistance of counsel.  *See Massaro v. United States*, 538 U.S. 500, 504 (2003) (holding that "an

ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255,

whether or not the petitioner could have raised the claim on direct appeal"); *United States v.

Barrett*, 102 F.4th 60, 72 (2d Cir. 2024) (citing *Massaro* and noting that "[i]n most cases, [the

Second Circuit] prefers for ineffective assistance claims to be raised in a collateral motion for

relief under 28 U.S.C. § 2255 rather than on direct appeal").  Williams has not offered any

explanation for his failure to appeal his conviction or sentence and, therefore, has not

demonstrated cause and any resulting prejudice necessary to raise his claim in a section 2255

motion.  He also has not asserted or demonstrated his actual innocence.  As a result, three of the

five claims[3] that Williams now raises — that the *Pimental* Letter constituted a plea agreement

that the Government breached; his guilty plea was insufficient and he is not bound to it; and the

Guidelines calculation was erroneous — are procedurally defaulted. *See, e.g.*, *Ndukwe v. United

States*, No. 24-CV-5073, 2024 WL 4711288, at *1, 3 (S.D.N.Y. Nov. 7, 2024) (concluding that

the procedural default rule barred defendant's claims that "he did not have enough time to

---

[3] Williams' ineffective assistance of counsel and *Johnson* claims are not procedurally
defaulted.

prepare for trial," "there was an insufficient factual predicate for the crime to which he entered a plea of guilty," and "there were errors in his sentencing" because "[he] was required to bring such claims through a direct appeal, which he did not file" and "ha[d] shown neither cause nor actual innocence to excuse that failure" but did not bar his ineffective assistance of counsel claim), *reconsideration denied*, 2025 WL 388217 (S.D.N.Y. Feb. 4, 2025); *Moore v. United States*, No. 20-CR-06079, 2024 WL 69845, at *3 n.4 (W.D.N.Y. Jan. 5, 2024) (concluding that "because [p]etitioner never pursued a direct appeal challenging the voluntariness of his plea, he ha[d] procedurally defaulted on any such claim in the context of th[e] habeas petition").

Moreover, as explained below, Williams' arguments fail on the merits.

### i. The *Pimental* Letter did not constitute a plea agreement

Williams' arguments that the *Pimentel* letter constituted a plea agreement and the Government breached the agreement by arguing for a sentence that was inconsistent with the letter's terms, (Def.'s Mot. 4), is without merit because the *Pimental* Letter by its express terms was not a plea agreement and the record is clear that Williams had no plea agreement with the Government. The *Pimental* Letter begins with the bolded statement, "This is not a plea agreement," (*see Pimental* Letter 1), and makes clear that the Guidelines calculations are not binding, (*see id.* at 2 n.1). *See Lesane v. United States*, No. 12-CR-524, 2020 WL 353454, at *13 (S.D.N.Y. Jan. 20, 2020) (finding petitioner's argument that the *Pimental* letter constituted a plea agreement that the government breached "frivolous"); *see also Thompson v. United States*, No. 09-CR-1245, 2015 WL 4064570, at *1 (S.D.N.Y. Apr. 13, 2015) (stating that the "defendant did not enter into a plea agreement with the government" but noting that "the government delivered a *Pimental* letter to defendant's counsel); *Francis v. United States*, No. 12-CV-1362, 2013 WL 673868, at *4 (S.D.N.Y. Feb. 25, 2013) (noting that the petitioner "pleaded guilty to the charges, pursuant to a *Pimental* letter but without a formal plea agreement"). At no time

during the Plea Hearing did the Government or the Court indicate that the *Pimental* Letter was a plea agreement, and Williams explicitly affirmed that he had no agreements with the Government nor had been made any promises regarding his sentence.  (*See* Plea Tr. 16:6–25, 21:17–22:3.)  Because the Government did not have a plea agreement with Williams, the Government's arguments at the Sentencing Hearing were not in breach of the *Pimental* Letter or any other agreement.[4]

> ### ii.    Williams' guilty plea was voluntary and had a factual basis

Williams' claims concerning the "insufficiency" of his guilty plea in effect argue that he entered the plea involuntarily and that the Court lacked a factual basis for accepting the plea, but his arguments are inconsistent with the record.[5]

"[Federal Rule of Criminal Procedure] 11 sets forth requirements for a plea allocution and is designed to ensure that a defendant's plea of guilty is a voluntary and intelligent choice among the alternative courses of action open to the defendant."  *United States v. Delvalle*, 94 F.4th 262, 264 (2d Cir. 2024) (quoting *Zhang v. United States*, 506 F.3d 162, 168 (2d Cir. 2007)); *see* Fed. R. Crim. P. 11(b)(2) ("Before accepting a plea of guilty . . . the court must address the defendant personally in open court and determine that the plea is voluntary and did not result from force, threats, or promises (other than promises in a plea agreement).").  "A plea

---

[4]  The Court notes that the Government consistently argued for the Court to impose a sentence of 120 months before and during the Sentencing Hearing, which was consistent with the Government's estimation of the Guidelines range of 120 months in the *Pimental* Letter.  (*See Pimental* Letter 2–3; Gov't's Sent'g Mem. 7–12; Sent'g Tr. 45:7–8.)

[5]  Plaintiff claims that his guilty plea "was insufficient" and he is not "bound to" it because "he did not admit the interstate commerce element," there was no written agreement, the Government never "established the [three] prong element justifying the petitioner['s] guilt," he "never agreed or reviewed any legal documents with attorney concerning [his] 'admission of guilt,'" he pleaded guilty "at the request of defense counsel," and "defense counsel with the [G]overnment moved to settle this matter without [his] approval or dismissal of offered proposals concerning [his] case."  (Def.'s Mot. 5, 20–25.)

is involuntary if it is 'the product of actual or threatened physical harm, mental coercion overbearing the defendant's will, or the defendant's sheer inability to weigh his options rationally.'" *Delvalle*, 94 F.4th at 266 (quoting *United States v. Roque*, 421 F.3d 118, 122 (2d Cir. 2005)). "[A]dmissions during [the defendant's] plea proceeding create 'a formidable barrier' to challenging the validity of his plea, and [the defendant's] 'bald statements that simply contradict what he said at his plea allocution are not sufficient grounds to withdraw the guilty plea' and may be rejected summarily." *United States v. Freeman*, 17 F.4th 255, 265 (2d Cir. 2021) (first quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977); and then quoting *United States v. Torres*, 129 F.3d 710, 715 (2d Cir. 1997)); *United States v. Lesane*, No. 21-2057, 2023 WL 1812878, at *2 (2d Cir. Feb. 8, 2023) ("A defendant's bald statements that simply contradict what he said at his plea allocution are not sufficient grounds to withdraw the guilty plea." (quoting *United States v. Hirsch*, 239 F.3d 221, 225 (2d Cir. 2001)), *cert. denied*, 144 S. Ct. 228 (2023); *United States v. Overton*, 24 F.4th 870, 879 (2d Cir. 2022) (same). To determine whether there is a factual basis for the plea, *see* Fed. R. Crim. P. 11(b)(3) ("Before entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea."), "the court must 'assure itself . . . that the conduct to which the defendant admits is in fact an offense under the statutory provision under which he is pleading guilty,'" *United States v. Aybar-Peguero*, 72 F.4th 478, 483 (2d Cir. 2023) (quoting *United States v. Maher*, 108 F.3d 1513, 1524 (2d Cir. 1997)), and "may look . . . to any facts on the record at the time of the plea proceeding," *United States v. Walker*, No. 22-2879, 2024 WL 763765, at *2 (2d Cir. Feb. 26, 2024) (internal quotation marks omitted) (quoting *United States v. Garcia*, 587 F.3d 509, 514 (2d Cir. 2009)). "The factual basis of the plea . . . need not be drawn directly from the defendant," and the court "may look to answers provided by counsel for the defense and government, the presentence report, 'or . . . whatever means is appropriate in a specific case.'" *United States v. Smith*, 160

F.3d 117, 121 (2d Cir. 1998) (quoting *Maher*, 108 F.3d at 1524–25); *see Walker*, 2024 WL 763765, at *2 (quoting same). "A Rule 11 violation is harmless only if it does not affect the defendant's 'substantial rights.'" *United States v. Gonzales*, 884 F.3d 457, 461 (2d Cir. 2018) (quoting Fed. R. Crim. P. 11(h)). "A 'substantial right' is affected if there is "a reasonable probability that, but for the error, [the defendant] would not have entered the plea." *Id.* (quoting *United States v. Pattee*, 820 F.3d 496, 505 (2d Cir. 2016)).

The transcript from Williams' Plea Hearing demonstrates that his plea was voluntary and that there was a factual basis for the plea. Williams affirmed under oath that he had not been promised anything "that has caused [him] to plead guilty," and also confirmed that he was entering the plea "voluntarily and of [his] own free will" and without any threat, force, or promises. (Plea Tr. 16:6–25, 21:17–22:3). Williams told the Court that he was satisfied with his counsel, (*see id.* at 12:12–24), and did not indicate in any way that his attorney had withheld legal documents or proposals concerning a potential plea agreement from his review nor that defense counsel told him to enter the guilty plea. Judge Pollak determined the factual basis for the plea on the record, as she questioned Williams to confirm "that [he was] aware not only of the elements of the crime with which he is charged, but also that the specific conduct committed satisfies those elements." *Aybar-Peguero*, 72 F.4th at 486. She asked Williams to state in his own words the conduct he engaged in which made him guilty of the charged crime, (Plea Tr. at 22:4–7); inquired as to how his conduct satisfied the individual elements of the charged offense, (*id.* at 22:11–24:16); and facilitated discussion of, and Williams' counsel's stipulation to, the Government's proof for the interstate commerce element, (*id.* at 24:17–25:6).

Williams' challenge to counsel's stipulation to the interstate commerce connection is without merit. The Supreme Court has held that the interstate commerce requirement of Section 922(g) is a jurisdictional element to which the "knowingly" requirement does not apply. *See*

*Rehaif v. United States*, 588 U.S. 225, 225, 230 (2019) (interpreting "in or affecting commerce" as a "jurisdictional element" of Section 922(g) and explaining that "[b]ecause jurisdictional elements normally have nothing to do with the wrongfulness of the defendant's conduct, such elements are not subject to the presumption" that "Congress intends to require a defendant to possess a culpable mental state regarding 'each of the statutory elements that criminalize otherwise innocent conduct'" (first citing *Torres v. Lynch*, 578 U.S. 452, 468 (2016); and then quoting *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 72 (1994))); *Torres*, 578 U.S. at 468 ("[C]ourts have routinely held that a criminal defendant need not know of a federal crime's interstate commerce connection to be found guilty."). "[U]nder § 922(g)(1), 'proof that the possessed firearm previously traveled in interstate commerce is sufficient to satisfy the statutorily required nexus between the possession of a firearm by a convicted felon and commerce." *United States v. Palozie*, 166 F.3d 502, 504 (2d Cir. 1999) (quoting *United States v. Sorrentino*, 72 F.3d 294, 296 (2d Cir. 1995)); *see Lesane*, 2020 WL 353454, at *16 (quoting same); *United States v. Tanner*, No. 16-CR-108, 2016 WL 6988826, at *2 (D. Vt. Nov. 29, 2016) ("[T]he Second Circuit has consistently held § 922(g)(1)'s 'in and affecting commerce' element is satisfied by proof that the firearm a defendant possessed had previously traveled in interstate commerce." (citing *United States v. Gaines*, 295 F.3d 293, 302 (2d Cir. 2002))); *see also Banks v. United States*, No. 21-CV-158, 2024 WL 243421, at *2 (D. Conn. Jan. 23, 2024) ("It is well established that Congress has authority pursuant to the Commerce Clause to bar felons from possessing a firearm under 18 U.S.C. § 922(g) so long as there is proof that the firearm has traveled at some point in time in interstate commerce."). While it was necessary for Williams to admit that he knew he possessed the ammunition identified in the Indictment and that he was a person convicted of a crime punishable by imprisonment for a term exceeding one year prior to his possession of the ammunition, which he did, Williams was not required to admit the

16

interstate commerce element.  The Government's proffered proof and his counsel's stipulation to it at the Plea Hearing, (Plea Tr. 24:17–25:6), satisfied this element.  *See Lesane*, 2020 WL 353454, at *16 (concluding that the defendant's allocution of the interstate commerce element was not required where the Government proffered proof during the plea hearing that the gun the defendant possessed in violation of section 922(g) "was not manufactured in New York and, therefore . . . traveled through interstate commerce" and defense counsel did not object).

Williams offers no evidence to substantiate the various claims that he now makes to contest the validity of his plea.[6]  His "bald statements" are insufficient bases to challenge the voluntariness of his guilty plea and, as such, the Court has ample ground to "reject[] summarily" Williams' arguments on the merits.  *Freeman*, 17 F.4th at 265.

### iii.    Williams has not pointed to any errors in the Guidelines calculation

Williams' arguments that the Guidelines calculation was erroneous because it applied an "outrageous" enhancement for attempted murder in connection with the June 17, 2020 shooting that he neither pleaded to nor otherwise admitted guilt for as well as the May 23, 2020 shooting that was determined to be "part of the same course of conduct or common scheme or plan," (Def.'s Mot. 4–5, 7–15), appear to be based on a misunderstanding of how the Guidelines are applied rather than any actual errors.

An error in sentencing "rise[s] to the level to be a cognizable basis for a collateral attack" only "when the 'error of fact or law [is] of the "fundamental" character that renders the entire proceeding irregular and invalid.'"  *United States v. Hoskins*, 905 F.3d 97, 103 (2d Cir. 2018)

---

[6]  For his argument that he "pled guilty at the request of defense counsel," Williams cites to the PSR.  (*See* Def.'s Mot. 24 (citing PSR ¶ 12).)  As the Government points out, (Gov't's Opp'n 7), the citation is a gross mischaracterization and misleading quotation of the PSR, which states, "The defendant pled guilty.  At the request of defense counsel, the probation officer asked no questions regarding the instant offense during the presentence interview," (PSR ¶ 12).

(quoting *United States v. Addonizio*, 442 U.S. 178, 186 (1979)).  "In the overwhelming majority of cases, a Guidelines sentence will fall comfortably within the broad range of sentences that would be reasonable in the particular circumstances," and "[i]t is especially 'difficult to find that a below-Guidelines sentence is unreasonable' for being too high."  *United States v. Smith*, No. 22-1927, 2024 WL 2828467, at *2 (2d Cir. June 4, 2024) (first quoting *United States v. Bryant*, 976 F.3d 165, 181 (2d Cir. 2020); and then quoting *United States v. Gates*, 84 F.4th 496, 505 (2d Cir. 2023)); *see Hoskins*, 905 F.3d at 104 (explaining that "on direct appeal . . . , in the absence of procedural error, within-Guidelines sentences will rarely be unreasonable" (citing *Rita v. United States*, 551 U.S. 338, 341 (2007))).  This "conclusion applies with equal, if not more, force on collateral review where there is the added interest in finality."  *Hoskins*, 905 F.3d at 105.

The Guidelines calculation did not assume Williams "pled guilty to a violation of [Section 2.A.2.1(a) of the Sentencing Guidelines] and[] not . . . 922(g)(1)," (Def.'s Mot. 4–5), nor was he required to plead guilty to attempted murder for section 2A2.1(a) to apply.  *See United States v. Green*, No. 22-3217, 2024 WL 4488577, at *4 n.1 (2d Cir. Oct. 15, 2024) ("[A] sentencing court may consider 'uncharged conduct proven by a preponderance of the evidence as long as that conduct does not increase either the statutory minimum or maximum available punishment.'" (quoting *United States v. Ulbricht*, 858 F.3d 71, 128 (2d Cir. 2017), *abrogated on other grounds by Carpenter v. United States*, 585 U.S. 296 (2018))).  Because the Court found at the Sentencing Hearing, based on a preponderance of the evidence, that Williams' June 17, 2020 shooting offense constituted attempted murder in the first degree, (*see* Sent'g Tr. 33:21–35:16), the Court appropriately applied Guideline §§ 2K2.1, 2X1.1, 2A2.1, and 2A2.2 and restricted the resulting Guidelines range of 168 to 210 months to the 120-month statutory maximum for the felon in possession of ammunition offense under 18 U.S.C. § 922(g)(1) to which Williams pleaded guilty.

In addition, the Court made factual findings to determine the proper Guidelines calculation solely on the basis of the June 17, 2020 shooting.  Contrary to Williams' claim, the Guidelines calculation in the PSR, which the Court found to be the appropriate Guidelines at the Sentencing Hearing, did not account for the May 23, 2020 shooting as part of the offense conduct.  Moreover, as noted in the PSR, the May 23, 2020 shooting was one of two incidents that "remain[ed] under investigation . . . for which the defendant was never held accountable and could not be factored into the advisory guideline calculations."  (PSR ¶ 77.)  While the Guidelines would "ordinarily" allow such incidents to "be bases for upward departure," the Guidelines calculation was restricted by the statutory maximum of the felon-in-possession charge to which Williams pleaded guilty.  (*Id.*)

Moreover, even if the Court committed error in calculating the Guidelines range on any of the bases that Williams argues, none of the errors are "so grave" as to "result[] in a complete miscarriage of justice," *Tavarez*, 81 F.4th at 240, because the Court sentenced Williams without applying the cross-reference for attempted murder and imposed a term of imprisonment of ninety-eight months, (*see* Sent'g Tr. 50:18–51:3).

**b.    Williams has failed to show that his counsel's performance was deficient**

Williams ineffective assistance of counsel arguments fail because he has not made a showing that his counsel's performance was in any way deficient.

"The Sixth Amendment right to counsel 'is the right to the effective assistance of counsel.'"  *Buck v. Davis*, 580 U.S. 100, 118 (2017) (quoting *Strickland v. Washington*, 466 U.S. 668, at 686 (1984)); *see also Premo v. Moore*, 562 U.S. 115, 121–22 (2011) (setting forth the standard for ineffective assistance under *Strickland*).  "A defendant who claims to have been denied effective assistance must show both that counsel performed deficiently and that counsel's deficient performance caused him prejudice."  *Buck*, 580 U.S. at 118 (citing *Strickland*, 466 U.S.

at 687); *see also Sexton v. Beaudreaux*, 585 U.S. 961, 965 (2018) ("To prove ineffective

assistance of counsel, a petitioner must demonstrate both deficient performance and prejudice."

(citing *Strickland*, 466 U.S. at 687)).  A court "need not consider the *Strickland* components 'in

the same order or even . . . address both components of the inquiry if the defendant makes an

insufficient showing on one.'"  *Freeman*, 17 F.4th at 266 (quoting *Strickland*, 466 U.S. at 697).

"Recognizing the 'tempt[ation] for a defendant to second-guess counsel's assistance after

conviction or adverse sentence,' . . . counsel should be 'strongly presumed to have rendered

adequate assistance and made all significant decisions in the exercise of reasonable professional

judgment.'"  *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (alteration in original) (quoting

*Strickland*, 466 U.S. at 689–90); *see also Bell v. Cone*, 535 U.S. 685, 698 (2002) (stating that

"[j]udicial scrutiny of a counsel's performance must be highly deferential" and that "every effort

[must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances

of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the

time" (alterations in original) (quoting *Strickland*, 466 U.S. at 689)); *United States v. Rosemond*,

958 F.3d 111, 121 (2d Cir. 2020) (same) (first quoting Strickland, 466 U.S. at 689–90; and then

quoting *Jackson v. Conway*, 763 F.3d 115, 153 (2d Cir. 2014)), *cert. denied*, 141 S. Ct. 1057

(2021).  While it is possible that, in certain instances, even "an isolated error" can support an

ineffective assistance claim, "it is difficult to establish ineffective assistance when counsel's

overall performance indicates active and capable advocacy."  *Harrington v. Richter*, 562 U.S. 86,

111 (2011).

In reviewing a claim of ineffective assistance of counsel, a court must "indulge a strong

presumption that counsel's conduct falls within the wide range of reasonable professional

assistance; that is, the defendant must overcome the presumption that, under the circumstances,

the challenged action might be considered sound trial strategy."  *Spencer v. Capra*, No. 21-1703,

2022 WL 4241367, at *3 (2d Cir. Sept. 15, 2022) (quoting *United States v. Gaskin*, 364 F.3d

438, 468 (2d Cir. 2004)); *see also Bierenbaum v. Graham,* 607 F.3d 36, 51 (2d Cir. 2010) (same)

(quoting *Strickland*, 466 U.S. at 689).  A single error by counsel may require reversal, but it must

be "sufficiently egregious and prejudicial" under the totality of the circumstances.  *See*

*Harrington*, 562 U.S. at 111 (quoting *Murray v. Carrier*, 477 U.S. 478, 496 (1986)).  "[A]

petitioner cannot prevail on a claim of ineffective assistance merely because he disagrees with

his counsel's strategy."  *Brown v. United States*, No. 16-CR-297, 2023 WL 4551682, at *5

(E.D.N.Y. July 14, 2023) (alteration in original) (quoting *Singleton v. Duncan*, No. 03-CV-561,

2006 WL 73734, at *14 (E.D.N.Y. Jan. 10, 2006)); *United States v. Sadler*, No. 16-CR-297,

2021 WL 2037863, at *4 (E.D.N.Y. May 21, 2021) (quoting same); *Singleton*, 2006 WL 73734,

at *14 (citing *Jones v. Barnes*, 463 U.S. 745, 752 (1983)).

Williams' argument that his lawyer failed to raise the legal issues that he now raises in

his motion are unavailing because, as explained above, the issues Williams raises in his motion

regarding the *Pimental* Letter, his guilty plea, the Guidelines calculations, and the sentence

imposed are meritless.  "[I]t is well settled that 'failure to make a meritless argument does not

amount to ineffective assistance.'"  *United States v. Davis*, 122 F.4th 71, 76 (2d Cir. 2024)

(quoting *United States v. Regalado*, 518 F.3d 143, 149 n.3 (2d Cir. 2008)).[7]

Moreover, Williams raised no concerns regarding his attorney's performance when

questioned at his Plea Hearing nor when the Court granted Williams the opportunity to speak at

---

[7] Because Williams has not made a sufficient showing under the first *Strickland* prong,
the Court does not address the second prong of *Strickland*, *i.e.*, whether he suffered prejudice
because of counsel's performance.  *See United States v. Freeman,* 17 F.4th 255, 266 (2d Cir.
2021) (observing that a court "need not . . . address both components of the [*Strickland*] inquiry
if the defendant makes an insufficient showing on one" (internal quotation marks and citation
omitted)).

his Sentencing Hearing.  To the contrary, the only statements Williams made on the record under

oath affirm that he was satisfied with his counsel's representation, (Plea Tr. 12:12–24), and these

statements hold a "strong presumption of verity" that, in the absence of any corroborating

evidence, Williams' arguments fail to rebut.  *See United States v. Overton*, 24 F.4th 870, 879 (2d

Cir. 2022) ("A criminal defendant's self-inculpatory statements made under oath at his plea

allocution carry a strong presumption of verity and are generally treated as conclusive in the face

of the defendant's later attempt to contradict them." (quoting *Adames v. United States*, 171 F.3d

728, 732 (2d Cir. 1999))), *cert. denied*, 143 S. Ct. 155 (2022).

   c.  **No residual clause was applied to Williams' sentencing and *Johnson* does not
       apply**

   Williams' argument that his sentence "was imposed in accordance with the residual

clause, then found in the Sentencing Guidelines, and the [G]uidelines residual clause is

unconstitutionally vague under *Johnson v. United States*," (Def.'s Mot. at 6–7 (internal quotation

marks omitted)), is misplaced because the residual clause was not applied to Williams' sentence

and, even if it were, *Johnson* would not apply.

   In *Johnson v. United States*, 576 U.S. 591 (2015), the Supreme Court struck down the

residual clause of the Armed Career Criminal Act's ("ACCA") definition of a "violent felony,"

holding that part of the definition was facially vague and violated due process.  *Johnson*, 576

U.S. at 605–06.  Prior to *Johnson*, the ACCA defined "violent felony" as any felony that "is

burglary, arson, or extortion, involves [the] use of explosives, or otherwise involves conduct that

presents a serious potential risk of physical injury to another."  18 U.S.C. § 924(e)(2)(B).  The

Court held that the "residual clause" of this definition — "otherwise involves conduct that

presents a serious potential risk of physical injury to another" — was unconstitutionally vague.

*Johnson,* 576 U.S. at 595–600.  The ACCA's residual clause required courts to take a

"categorical approach" when determining whether an offense qualified as a "violent felony" under the residual clause. *Id.* at 596. In *Johnson,* the Supreme Court emphasized "the indeterminacy of th[at] wide-ranging inquiry," and struck down the residual clause as unconstitutionally vague. *Id.* at 597. Before August 1, 2016, section 4B1.2(a)(2) of the Guidelines included its own residual clause that was "identically worded" to the residual clause invalidated under *Johnson. United States v. Castillo*, 896 F.3d 141, 145 & 145 n.7, 146 (2d Cir. 2018); *id.* at 145 n.7 (identifying the residual clause in Guidelines § 4B1.2(a)(2) as "or otherwise involves conduct that presents a serious potential risk of physical injury to another" under the definition of "crime of violence"). After *Johnson*, "the Sentencing Commission amended the Guidelines, effective August 1, 2016, to remove the residual clause." *United States v. Jones*, 878 F.3d 10, 14 n.1 (2d Cir. 2017). In addition, "[t]he Supreme Court ruled in *Beckles v. United States*, that the Guidelines . . . are not subject to vagueness challenges, including those based on the residual clause of § 924(e) invalidated by *Johnson*." *Collier v. United States*, 989 F.3d 212, 216 (2d Cir. 2021) (citing *Beckles v. United States*, 580 U.S. 256, 259 (2017)). Thus, the November 1, 2021 Sentencing Guidelines in effect and applied to determine Williams' Guidelines range did not contain the identically worded residual clause at issue in *Johnson* and even assuming that a residual clause was applied to Williams' Guidelines sentence, Williams could not bring a claim under *Johnson* to challenge its application because under *Beckles*, the Sentencing Guidelines are not subject to vagueness challenges. *See, e.g.*, *United States v. Candelario*, No. 10-CR-281, 2021 WL 2037866, at *3–4 (E.D.N.Y. May 21, 2021) (rejecting section 2255 defendant's argument that under *Johnson* the application of the Guidelines § 4B1.2(a)(2) residual clause to his sentence "violated his constitutional rights" because the argument was "squarely rejected by *Beckles*"); *Ortiz v. United States*, No. 06-CR-532, 2018 WL 1701934, at *3 (E.D.N.Y. Mar. 30, 2018) (rejecting section 2255 petitioner's argument that the

career offender sentencing enhancement applied to his sentence under Guidelines sections 4B1.1

and 4B1.2 that included an identically worded residual clause to the ACCA clause voided for

vagueness in *Johnson* violated his constitutional rights "because under *Beckles*, the [c]areer

[o]ffender Guideline is not subject to void-for-vagueness challenges").

### d. An evidentiary hearing is not warranted

An evidentiary hearing on Williams' claims is not warranted because the record

conclusively establishes that he is not entitled to relief and there are no material facts in dispute.

"Section 2255 requires the district court to hold a hearing, or to 'use methods . . . to

expand the record without conducting a full-blown testimonial hearing,'" *Allen v. Grist Mill Cap.*

*LLC*, 88 F.4th 383, 397 (2d Cir. 2023) (alteration in original) (quoting *Chang v. United States*,

250 F.3d 79, 86 (2d Cir. 2001)), "[u]nless the motion and the files and records of the case

conclusively show that the prisoner is entitled to no relief," *id.* (alteration in original) (quoting

*Puglisi*, 586 F.3d at 213); *United States v. Jackson*, No. 23-6281, 2024 WL 4878534, at *2 (2d

Cir. Nov. 25, 2024) (same). "The procedure for determining whether a hearing is necessary is in

part analogous to a summary judgment proceeding . . . . If material facts are in dispute, a hearing

should usually be held, and relevant findings of facts made." *Raysor v. United States*, 647 F.3d

491, 494 (2d Cir. 2011) (alterations omitted); *Santillan v. United States*, No. 13-CR-138, 2024

WL 4276183, at *5 (S.D.N.Y. Sept. 24, 2024) (quoting same). The Second Circuit has noted,

however, that a hearing is not required if a petitioner's allegations are "vague, conclusory, or

palpably incredible," *Gonzalez v. United States*, 722 F.3d 118, 130–31 (2d Cir. 2013) (quoting

*Machibroda v. United States*, 368 U.S. 487, 494 (1962)); *United States v. Dorta-Hernandez*, No.

21-CR-640, 2024 WL 4444211, at *3 (S.D.N.Y. Oct. 8, 2024) (quoting same), and "'a district

court has the power to dismiss the petition on the merits *without prior notice*' if it is clear 'that

the petitioner is not entitled to relief,'" *Seabrook*, 2023 WL 7489961, at *2  (quoting *Ethridge v.*

24

*Bell*, 49 F.4th 674, 682 (2d Cir. 2022)).  *See also Jackson*, 2024 WL 4878534, at *2 ("The

Supreme Court has made clear that a movant is not 'always' entitled 'to appear in a district court

for a full hearing' pursuant to section 2255, and we ourselves have routinely permitted district

courts 'to choose a middle road that avoid[s] the delay, the needless expenditure of judicial

resources, the burden on trial counsel and the government, and perhaps the encouragement of

other prisoners to make similar baseless claims that would have resulted from a full testimonial

hearing.'"  (first quoting *Machibroda*, 368 U.S. at 495; and then quoting *Chang*, 250 F.3d at

86)); *Margolies v. United States*, No. 23-370, 2024 WL 4501907, at *2 (2d Cir. Oct. 16, 2024)

("[T]o obtain a hearing, a claimant 'need establish only that he has a plausible claim of

ineffective assistance of counsel, not that he will necessarily succeed on the claim.'"  (quoting

*Raysor*, 647 F.3d at 494)); *United States v. Van Manen*, No. 18-CR-30, 2024 WL 3924676, at *5

(S.D.N.Y. Aug. 23, 2024) (Section 2255 states that "[u]nless the motion and the files and records

of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice

thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine

the issues and make findings of fact and conclusions of law with respect thereto.").

　　"In determining whether the assertions in a § 2255 motion warrant discovery or a

hearing, the court must also take into account admissions made by the defendant at his plea

hearing, for 'solemn declarations in open court carry a strong presumption of verity.'"  *Gonzalez*,

722 F.3d at 131 (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)); *see United States. v.

Fletcher*, No. 22-2994, 2024 WL 658818, at *2 (2d Cir. Feb. 16, 2024) (finding that the

defendant's admissions during change-of-plea hearing were "[s]olemn declarations in open

court" that "carry a strong presumption of verity" (quoting *Blackledge*, 431 U.S. at 74)).

"Subsequent presentation of conclusory allegations unsupported by specifics is subject to

summary dismissal, as are contentions that in the face of the record are wholly incredible."

*Gonzalez*, 722 F.3d at 131; *see United States v. Derounian*, No. 16-CR-412, 2024 WL 3623522, at *22 (E.D.N.Y. Aug. 1, 2024) (same).

The motion and record conclusively establish that Williams is not entitled to relief because (1) his claims challenging his guilty plea and Guidelines calculation are procedurally defaulted and otherwise fail on the merits; (2) in view of the admissions he made at his Plea Hearing, *see Gonzalez*, 722 F.3d at 130–31; *see also Fletcher*, 2024 WL 658818, at *2, Williams' conclusory allegations supporting his ineffective assistance of counsel claim do not plausibly support the first prong of the *Strickland* test, *see Margolies*, 2024 WL 4501907, at *2; and (3) the residual clause does not apply. Moreover, none of his claims raise material disputed facts that warrant an evidentiary hearing. *See Raysor*, 647 F.3d at 494; *see also Puglisi*, 586 F.3d at 214 ("[A] district court need not assume the credibility of factual assertions, as it would in civil cases, where the assertions are contradicted by the record in the underlying proceeding." (collecting cases)); *Oruche v. United States*, No. 20-CR-657, 2024 WL 3728702, at *5 (S.D.N.Y. Aug. 7, 2024) (quoting same).

Accordingly, the Court denies Williams' petition to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255.

### III.  Motion to reduce sentence under 18 U.S.C § 3582(c)(2)

Williams argues that his sentence should be reduced because the Court improperly "relied on the November 1, 2021 [Guidelines] in calculating his criminal history score of seven[] points," (Def.'s Mem. 5–6), and applied a two-point enhancement that "no longer appl[ies]" under the Guideline amendments that went into effect on November 1, 2023, (*id.* at 16–20). Williams argues that because of the amendment to the Guidelines, his criminal history score should be reduced to five points, which changes his criminal history category from IV to III,

reduces his base level offense by two points, and requires the Court to reduce his sentence.  (*Id.* at 18–20.)

The Government does not dispute that application of the 2023 amendments would change Williams's criminal history category from IV to III and asserts that the "Guidelines range of imprisonment would change from 168 to 210 months to 151 to 188 months."  (Gov't's Opp'n 5.) The Government argues, however, that because the revised Guidelines imprisonment range would remain "above the [ten]-year statutory maximum" and thus yield the same effective Guidelines range of 120 months, Williams is not entitled to a sentence reduction.  (*Id.* at 5–6.)

When a defendant "has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission," section 3582(c)(2) provides that "the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(2).  Reductions are therefore authorized only if they are consistent with the Sentencing Commission's policy statements — "namely [Guidelines] § 1B1.10."  *Dillon v. United States*, 560 U.S. 817, 826 (2010) ("Section 3582(c)(2) instructs a district court to 'conside[r] the factors set forth in section 3553(a) to the extent that they are applicable,' but it authorizes a reduction on that basis only 'if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission' — namely, § 1B1.10.").[8]  Section 3582(c)(2) thus establishes the

---

[8]  Although the Supreme Court decided *Dillon v. United States*, 560 U.S. 817 (2010) based on versions of section 3582 and the Guidelines that have since been amended, the language that applies to this case has remained the same: Section 3582 has been amended only once since *Dillon*, but subsection (c)(2) was left unchanged.  *See* First Step Act of 2018, Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239 (2018).  Section 1B1.10 of the Guidelines remains the "policy statement governing § 3582(c)(2) proceedings."  *See Dillon*, 560 U.S. at 819; United States Sentencing Guidelines ("U.S.S.G.") § 1B1.10(a)(1) ("As required by 18 U.S.C.

following "two-step inquiry": "A court must first determine that a reduction is consistent with § 1B1.10 before it may consider whether the authorized reduction is warranted, either in whole or in part, according to the factors set forth in § 3553(a)."  *Id.*; *United States v. Williams*, 102 F.4th 618, 623 (2d Cir. 2024) ("[A] district court must determine 'whether the defendant is eligible for a reduction by calculating the Guidelines range that would have been applicable had the amended Guidelines been in place at the time the defendant originally was sentenced.' If the defendant is found to be eligible, the district court must still consider whether a sentence reduction is warranted based on the sentencing factors in section 3553(a) and any applicable policy statements issued by the Sentencing Commission."  (first quoting *United States v. Wilson*, 716 F.3d 50, 52 (2d Cir. 2013); and then citing *Dillon*, 560 U.S. at 827)); *see also United States v. Osorio*, No. 13-CR-426, 2024 WL 308274, at *1 (E.D.N.Y. Jan. 26, 2024) (concluding at step one that "[a]ny reduction to [the defendant's] sentence would be inconsistent with § 1B1.10 and, therefore, unauthorized"); *United States v. Ross*, No. 15-CR-95, 2024 WL 149130, at *2 (S.D.N.Y. Jan. 12, 2024) (denying appointment of counsel after applying the two-step inquiry and finding the defendant ineligible for a sentence reduction).

Pursuant to section 1B1.10 of the Guidelines, a court "determining whether, and to what extent, a reduction in the defendant's term of imprisonment . . . is warranted" must first "determine the amended guideline range that would have been applicable to the defendant if the amendment(s) to the guidelines listed in subsection (d) had been in effect at the time the defendant was sentenced."  U.S.S.G. § 1B1.10(b)(1).  Among the amendments listed in subsection (d) of section 1B1.10 is Amendment 821, which went into effect on November 1,

---

§ 3582(c)(2), any such reduction in the defendant's term of imprisonment shall be consistent with this policy statement.").

2023 and was applied retroactively.[9]  *See United States v. Major*, No. 23-6166, 2024 WL 1404577, at \*4 (2d Cir. Apr. 2, 2024) (explaining that "the Sentencing Commission has made [Amendment 821] retroactive, thereby authorizing eligible defendants to seek a discretionary sentence reduction under 18 U.S.C. § 3582(c)(2)"); *United States v. Garcia*, No. 20-CR-673, 2024 WL 586459, at \*1 (S.D.N.Y. Feb. 12, 2024) (noting that Amendment 821 "went into effect on November 1, 2023 and applies retroactively").  Part A of Amendment 821 modified the calculation of "status points" added to a defendant's criminal history score under U.S.S.G. § 4A1.1.  In its previous form, section 4A1.1(d) instructed as follows: "Add 2 points if the defendant committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status."  U.S. Sent'g Comm'n, Amendments to the Sentencing Guidelines, 88 Fed. Reg. 28,254, 28,270 (May 3, 2023).  Amendment 821 eliminated this subsection and replaced it with the following provision: "Add 1 point if the defendant (1) receives 7 or more points under subsections (a) through (d), and (2) committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status."  *Id.*; U.S.S.G. § 4A1.1(e).

The Sentencing Commission's policy statements further provide that "[a] reduction in the defendant's term of imprisonment is not consistent with this policy statement and therefore is not authorized under 18 U.S.C. § 3582(c)(2) if" the amendment at issue "does not have the effect of lowering the defendant's applicable guideline range."  U.S.S.G. § 1B1.10(a)(2)(B); *see also Williams*, 102 F.4th at 622 (noting that the Guidelines "forbid[s] sentence reductions if the

---

[9] U.S. Sent'g Comm'n, *Amendment 821*, https://www.ussc.gov/guidelines/amendment/821 (last visited Dec. 17, 2024).

amendment 'does not have the effect of lowering the defendant's applicable guideline range'" (quoting U.S.S.G. § 1B1.10(a)(2)(B))); *United States v. King*, 813 F. App'x 690, 692 (2d Cir. 2020) (observing that a "sentencing court cannot reduce [a] defendant's sentence if [the relevant] retroactive amendment 'does not have the effect of lowering the defendant's applicable guideline range'" (quoting U.S.S.G. § 1B1.10(a)(2)(B))); *United States v. Jarvis*, 883 F.3d 18, 21 (2d Cir. 2018) ("[A] sentence reduction is not authorized if 'an amendment [to the Guidelines range] . . . is applicable to the defendant but the amendment does not have the effect of lowering the defendant's applicable guideline range because of the operation of another guideline or statutory provision.'" (second alteration in original) (quoting *United States v. Williams*, 551 F.3d 182, 186 (2d Cir. 2009))); *United States v. Ajelero*, No. 17-CR-546-2, 2024 WL 5105550, at *3 (E.D.N.Y. Dec. 13, 2024) (explaining that a sentencing reduction under Amendment 821 "may be applied retroactively unless the reduction 'does not have the effect of lowering the defendant's applicable guideline range'" (quoting U.S.S.G. § 1B1.10(a)(2)(B))).

### a. William is entitled to a reduction in his criminal history points but ineligible for a reduction in his sentence

Williams is entitled to a two-point reduction in his criminal history points because his criminal history category of IV at the time of sentencing was based on a total of seven criminal history points, two of which were assigned under the version of U.S.S.G. § 4A1.1(d) in effect before Amendment 821.  (PSR ¶ 30.)  Under Amendment 821, the two-point increase no longer applies, reducing Williams' total criminal history score to five.  The lower criminal history score places Williams in criminal history category III and with his total offense level of 32, the applicable revised Guidelines range is 151 months to 188 months of imprisonment.  *See* U.S.S.G Manual ch. 5, pt. A (Sent'g Comm'n 2023).  Because the amended Guidelines range remains above the ten-year statutory maximum, the Guidelines range remains restricted to 120 months.

Williams is therefore ineligible for a reduction in his sentence because his sentence of ninety-eight months is below the lower end of the amended Guidelines range. *See id.* § 1B1.10(b)(2)(A) ("[T]he court shall not reduce the defendant's term of imprisonment under 18 U.S.C. § 3582(c)(2) and this policy statement to a term that is less than the minimum of the amended guideline range . . . ."); *King*, 813 F. App'x at 692 (a "sentencing court cannot reduce [a] defendant's sentence if [the relevant] retroactive amendment 'does not have the effect of lowering the defendant's applicable guideline range'" (citation omitted)).

> **b.** **The section 3553(a) factors counsel against a reduction in Williams' sentence even when the cross-reference to aggravated assault rather than attempted murder is applied**

The Court also finds a reduction in Williams' sentence is unwarranted even if the cross-reference to aggravated assault is used to determine Williams' amended Guidelines range because the 3553(a) factors do not support a sentence reduction. The amended Guidelines range of 151 to 188 months of imprisonment calculated above assumes the cross-reference to attempted murder, which the Court found to be the appropriate Guidelines range but expressly declined to apply in sentencing Williams. (*See* Sent'g Tr. 50:18–23.) Applying instead the cross-reference to aggravated assault, as Williams argued for at sentencing, the recommended Guidelines range before Amendment 821, based on a total offense level of 19, is 46 months to 57 months. (*See id.* 13:2–10). With the reduced criminal history score of five under the revised Sentencing Guidelines placing Williams in criminal history category III instead of IV and the total offense level of 19, the recommended Guidelines range would be 37 months to 46 months. Because the advisory Guidelines range is lower, a sentence reduction would be consistent with Guidelines § 1B1.10, but, upon consideration of the section 3553(a) factors, the Court declines to reduce Williams' sentence. *See Dillon*, 560 U.S. at 826 ("Section 3582(c)(2) instructs a district court to 'conside[r] the factors set forth in section 3553(a) to the extent that they are applicable,' but it authorizes a reduction on

that basis only 'if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission' — namely, § 1B1.10."); *Williams*, 102 F.4th at 623 (same).

The section 3553(a) factors weigh heavily against reducing Williams' sentence for the reasons discussed on the record at Williams' sentencing.  (*See* Sent'g Tr. 49:1–51:3.)  These reasons include that the surveillance video of Williams' June 17, 2020 shooting of two individuals, the injuries of these two victims, and the near-miss of what could have been a third victim all demonstrated the serious nature of Williams' conduct in connection with the ammunition that formed the basis of his felon in possession of ammunition conviction.  *See United States v. Martinez*, 110 F.4th 160, 178–79 (2d Cir. 2024) (observing that a district court that fully appreciates the "heinous nature" of an offense would accord weight to aggravating section 3553(a) factors such as: "(1) the nature and circumstances of the offense; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for the sentence imposed to afford adequate deterrence to criminal conduct; and (4) the need to protect the public from further crimes of the defendant" (quoting *United States v. Mumuni Saleh*, 946 F.3d 97, 110 (2d Cir. 2019))).

Moreover, although Amendment 821 reflects the Sentencing Commission's updated view on appropriate sentences for defendants who commit offenses while serving criminal sentences, criminal history remains relevant to the Court's consideration of the section 3553(a) factors. Williams committed the felon in possession of ammunition offense while on probation for a prior state conviction and his criminal history, while not extensive, demonstrates a concerning disregard for the law and mandates a sentence that "promote[s] respect for the law," 18 U.S.C. § 3553(a)(2)(A), "afford[s] adequate deterrence to criminal conduct," *id.* § 3553(a)(2)(B), and "protect[s] the public from further crimes of the defendant," *id.* § 3553(a)(2)(C).  *See, e.g.*, *United States v. Boykins*, No. 18-CR-338, 2024 WL 4625294, at *3 (E.D.N.Y. Oct. 30, 2024)

(finding defendant eligible for sentence reduction under Amendment 821 but concluding the section 3553(a) factors counseled against reduction because the defendant's conduct "was serious, violent, and harmful to the community" as he "was convicted of possessing a firearm in connection with a shooting of an unarmed woman in the vicinity of several other unarmed civilians" and he "committed the instant offense while on supervised release"); *United States v. Cirino*, 742 F. Supp. 3d 215, 219–21 (D. Conn. 2024) (finding the defendant eligible for a sentence reduction under Amendment 821 but declining to reduce his sentence because, *inter alia*, the defendant committed the offense while on supervised release); *see also United States v. Stephens*, 718 F. Supp. 3d 294, 298 (W.D.N.Y. 2024) (declining to reduce a defendant's sentence in part because the events underlying the conviction "occurred while [the defendant] was on parole for a state felony offense"). The Court finds that the original sentence of ninety-eight months is sufficient but not greater than necessary to comply with the purposes of sentencing.

Accordingly, the Court denies Williams' petition to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(2).

## IV.  Conclusion

For the foregoing reasons, the Court denies Williams' motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 and to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(2).

Dated:  February 28, 2025
       Brooklyn, New York

                        SO ORDERED:


                        _____/s/MKB_____
                        MARGO K. BRODIE
                        United States District Judge